*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

TOUCHWERX, INC., ANTHONY UHRICK, and
MARC DRENNING,

UNPUBLISHED
February 11, 2020

Plaintiffs-Appellants,

v

No. 346342
Washtenaw Circuit Court
LC No. 18-0000914-CB

EDWARD L. GATT and DYNICS, INC.,

Defendants-Appellees.

Before: FORT HOOD, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's order granting defendants' motion for summary disposition under to MCR 2.116(C)(7) (claim barred by statute of limitations) and (C)(8) (failure to state a claim). We reverse and remand for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff Touchwerx, Inc. (Touchwerx) (formally known as Cyber Automation, Inc.) is an Illinois corporation. Defendant Dynics, Inc. (Dynics) is a Michigan corporation. According to plaintiffs' complaint, "Touchwerx assists companies in bringing products to market, including opening markets, territory management, new business development, channel sales, strategic relationships, and promotion," while Dynics provides "industrial computer solutions, enterprise software, large format displays, and interactive touchscreen products." Defendant Edward Gatt (Gatt) is the president of Dynics. Plaintiff Anthony Uhrick (Uhrick) is the president, chief executive officer (CEO), and sole shareholder of Touchwerx.

According to plaintiffs, Uhrick and Gatt together formed Panelworx, Inc. (Panelworx), a Michigan corporation, in 2006. Attorney Kurtis R. Dumaw incorporated the entity. Gatt served as the president of Panelworx, and Gatt and Uhrick served as its directors. As of November 2008, Panelworx had 30,000 shares of outstanding stock, which had been issued to Touchwerx, Plaintiff Marc Drenning (Drenning), and Gatt as follows: Touchwerx — 13,500 shares; Gatt — 13,500 shares; Drenning — 3,000 shares. According to plaintiffs' complaint, in November and December 2008, the parties discussed merging Panelworx into Dynics, with Panelworx being the merging

-1-

corporation and Dynics the surviving corporation. Plaintiffs allege that Dumaw, in his role as defendants' attorney, assured plaintiffs that their shares of Panelworx stock would convert into shares of Dynics stock, and that they would thereby become shareholders of Dynics.

On December 28, 2008, Panelworx and Dynics entered into an Agreement and Plan of Merger (Merger Agreement or agreement). Section 3.1 of the Merger Agreement, entitled "Pre-Merger Conditions," stated:

> **3.1   Pre-Merger Conditions.**   Each party's obligation to effect the Merger shall be subject, at or before the Effective Time,[1] to approval of this Agreement and the Merger by the Merging Corporation's members in accordance with the provisions of applicable law. There shall not be any statute, rule, or regulation promulgated, enacted, or deemed applicable making it illegal for Surviving Corporation to consummate the Merger; nor any order, judgment, decree, or ruling by any foreign or domestic court or governmental body enjoining Surviving Corporation from consummating the Merger. *As of the date of this Agreement, there are 30,000 outstanding shares of the Merging Corporation's common stock but the Merging Corporation has agreed to redeem and purchase the following shares from its shareholders prior to the Effective Time:*
>
> | Shareholder | Redeemed Shares | Purchase Price |
> |---|---|---|
> | *Edward L. Gatt* | *13,500* | *$79,000* |
> | *Marc Drenning* | *1,500* | *$17,500* |
> | *Anthony Uhrick*[2] | *10,500* | *$79,000* |
>
> If the Merging Corporation fails to re-purchase a sufficient amount of shares from its shareholders on or before December 30, 2008, so that the total amount of its outstanding shares does not exceed 4,500, then the Surviving Corporation shall have the unconditional right to cancel the merger without further obligation, in which case this Agreement shall terminate as provided below. [Emphasis added].

In other words, it was contemplated that Panelworx would redeem all of Gatt's 13,500 shares, that it would redeem 1,500 of Drenning's 3,000 shares, and that it would redeem 10,500 of Uhrick's 13,500 shares. This would reduce Panelworx's outstanding shares from 30,000 to 4,500 (of which Uhrick would own 3,000 shares and Drenning would own 1,500 shares).

---

[1] Section 1.2 of the Merger Agreement defined the "Effective Time" as "when the certificate of merger is properly endorsed by the Michigan Department of Consumer and Industry Services, Bureau of Commercial Services, Corporation Division." Certificates of Merger were endorsed on October 19, 2010.

[2] Although the Merger Agreement reflects that Panelworx had agreed to redeem certain of *Uhrick's* shares, it appears in context that the agreement was referring to shares held by *Touchwerx* (of which Uhrick was the sole owner).

Section 2.2 of the Merger Agreement provided for the conversion of Panelworx stock into Dynics stock; specifically, "[a]t the Effective Time, . . . each share of the common stock of [Panelworx] outstanding immediately before the Effective Time, by virtue of the Merger, shall be converted into the right to receive one (1) share of fully paid and non-assessable common stock of [Dynics]." By virtue of the expected redemptions of Panelworx stock as set forth in Section 3.1, it was anticipated, as stated in Section 2.1 of the Merger Agreement, that "[a]s of the date of the Effective Time, there will be 4,500 outstanding shares of [Panelworx] common stock."

Section 4.1 of the Merger Agreement also provided that it could be terminated and the merger abandoned before the Effective Time by mutual written consent of the members of Panelworx and Dynics's board of directors, or if the merger was later determined to be illegal. On the Merger Agreement's termination, it would become void and have no effect.

The following day, on December 29, 2008, Gatt and Uhrick, as Panelworx's directors, adopted a consent resolution formally authorizing and directing Gatt to execute the Merger Agreement and any documents relating to implementing that agreement for Panelworx. On October 19, 2010, as noted, Certificates of Merger for both Dynics and Panelworx, signed by Gatt on behalf of both companies, were endorsed by the Michigan Department of Energy, Labor & Economic Growth (formerly known as the Michigan Department of Consumer and Industry Services), Bureau of Commercial Services, Corporation Division, thereby establishing the Effective Time under Section 1.2 of the Merger Agreement. Both certificates provided that "[e]ach share of common stock of Panelworx, Inc. shall be converted into one share of the common stock of Dynics, Inc. Each share of common stock of Dynics, Inc. shall continue to be an outstanding share of common stock after the merger." The certificates listed the outstanding shares of common stock for both companies, and indicated that Panelworx had 4,500 shares and Dynics had 25,500.

Notwithstanding the terms of the Merger Agreement, it appears that Panelworx never redeemed any shares as provided for in the agreement. Under Section 3.1 of the agreement, Panelworx therefore had "the unconditional right to cancel the merger without further obligation, in which case this Agreement [would] terminate . . .." It does not appear that Panelworx ever exercised its right to cancel the merger, however, or that the agreement terminated as a result.

On January 13, 2016, Uhrick sent an e-mail to Gatt, copying Dumaw, stating, "I was just looking at some old agreements and noticed that I never received the stock certificates for Dynics after the merger with Panelworx. Were these sent to me? I don't' recall receiving them." He did not receive a response. Uhrick sent Gatt another e-mail on February 2, 2017 indicating that he and Drenning "would like to review the current financial information for Dynics and a copy of the Corporate tax returns for 2016," and inquiring as to when they could review those documents. Gatt responded, stating, "The agreement for both of you to purchase ownership in Dynics was never completed, funds were never received and stock certificates were never distributed." Dumaw also responded, stating, "Can you clarify the basis of this request? Although I have not been actively involved with Dynics in recent years, it was my understanding that you were no longer a shareholder of Dynics (shortly after the merger occurred). I will dig into some of my old files to see what I can find but, in any event, I do not have a copy of any current financials or tax returns." On July 10, 2018, plaintiffs, through their counsel, sent a letter formally requesting, pursuant to MCL 450.1487, that they be allowed to inspect the corporate books and records of

Dynics, and that certain specified documents be produced to them. It appears that defendants never responded to this request.[3]

Plaintiffs filed suit in August 2018. Plaintiffs' 10-count complaint asserted claims for (1) declaratory judgment (requesting that the trial court declare their ownership rights in Dynics, and specifically that Touchwerx holds 13,500 shares of Dynics stock and that Drenning holds 3,000 shares of Dynics stock), (2) minority shareholder oppression, (3) accounting and financial disclosure, (4) fraud and misrepresentation, (5) silent fraud, (6) innocent misrepresentation, (7) promissory estoppel, (8) unjust enrichment, (9) reformation, and (10) breach of fiduciary duty.[4] In lieu of answering plaintiff's complaint, defendants filed a motion under MCR 2.116(C)(7) and (8), arguing that all of plaintiffs' claims, with the exception of Count III (for accounting and financial disclosure), were barred by the applicable limitations periods, and that plaintiffs were not entitled to an accounting (or financial disclosure) because they were not shareholders of Dynics. After a hearing, the trial court granted defendants' motion, stating that "there never was a shareholder relationship between Plaintiff and the company [Dynics]," that "the effective date of the merger was October 19, 2010; and given the lack of action by the Plaintiff during that succeeding period of time, the Statute of Limitations ran." The court further stated with regard to Count III that "again the Plaintiffs were not shareholders within the context in that the merger agreement itself had never been satisfied, had never been, had never been – essentially receipt of compensation to the extent that would provide support for such a claim." The trial court entered an order granting defendants' motion for summary disposition under MCR 2.116(C)(7) and (C)(8).

This appeal followed.

## II. SUMMARY DISPOSITION UNDER MCR 2.116(C)(7)

Plaintiffs argue that the trial court erred by granting summary disposition in favor of defendants on nine of their ten claims[5] under MCR 2.116(C)(7). We agree.

We review de novo a trial court's ruling on a motion for summary disposition. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2001). MCR 2.116(C)(7) "permits summary disposition where the claim is barred by an applicable statute of limitations." *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010). "[W]hether a cause of action is barred by the statute of limitations is a question of law that this Court also reviews de novo." *Citizens Ins Co v Scholz*, 268 Mich App 659, 662; 709 NW2d 164 (2005) (quotation marks and citation omitted). "When reviewing a motion for summary disposition under MCR 2.116(C)(7), a court must accept as true the plaintiff's well-pleaded factual allegations and construe them in the plaintiff's favor." *Guerra v Garratt*, 222 Mich App 285, 289; 564 NW2d 121 (1997) (quotations

---

[3] The record does not contain a response from defendants, and plaintiffs, in their brief on appeal, state only that defendants "refused to comply" with any of their requests.

[4] Plaintiffs did not assert a claim relating to the redemption of their Panelworx shares under the Merger Agreement, but only claims related to their alleged status as shareholders of Dynics.

[5] The trial court granted summary disposition on Count III of plaintiffs' complaint under MCR 2.116(C)(8).

marks and citation omitted). "[I]f a material factual dispute exists such that factual development could provide a basis for recovery, summary disposition is inappropriate." *Id.* (quotation marks and citation omitted).

MCL 600.5805(1) provides that "[a] person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section." MCL 600.5827 states that

> Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections [MCL 600.5829 to 600.5838] and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.
>
> By enacting a statute of limitations, the Legislature determines the reasonable period of time given to a plaintiff to pursue a claim. The policy reasons behind statutes of limitations include: the prompt recovery of damages, penalizing plaintiffs who are not industrious in pursuing claims, security against stale demands, relieving defendants' fear of litigation, prevention of fraudulent claims, and a remedy for general inconveniences resulting from delay. . . . [*Gladych v New Family Homes, Inc.*, 468 Mich 594, 708-709; 664 NW2d 705 (2003) (quotation marks and citation omitted).]

For purposes of this appeal, we need not determine the statute of limitations that is applicable to each of the counts of plaintiffs' complaint. The parties appear to agree, albeit with some differences, that the statute of limitations applicable to these counts is either three years or six years from the date of accrual.

Where the parties principally diverge is in their assessment of when plaintiffs' claims accrued. See MCL 600.5827. Plaintiffs generally contend that their claims did not accrue until February 2, 2017,[6] when defendants refused to recognize plaintiffs' rights as shareholders.[7] On the other hand, defendants argue that plaintiffs' claims accrued "no later than October 19, 2010, when the merger certificates were endorsed, because the merger certificates "put [plaintiffs] on notice that their 16,500 shares were not recognized."[8]

---

[6] With respect to at least some of their claims, plaintiffs maintain that the doctrine of fraudulent concealment applies to toll the applicable statutes of limitation until February 2, 2017.

[7] The exception is Count X (breach of fiduciary duty), which plaintiffs contend accrued in January 2016, when defendants failed to respond to Uhrick's inquiry about stock certificates.

[8] As noted earlier in this opinion, Touchwerx (which was solely owned by Uhrick) and Drenning together owned 16,500 shares of Panelworx before the merger (Touchwerx owning 13,500 shares and Drenning owning 3,000 shares). The merger agreement contemplated that Panelworx would,

As noted, the trial court found that there was never a shareholder relationship between plaintiffs and Dynics, presumably because the anticipated redemption never occurred. The court therefore granted summary disposition in favor of defendants on statute of limitations grounds. We do not find the issue to be so clear-cut.

We conclude that factual issues abound that make the granting of summary disposition at this juncture of the case at best premature. It appears to be clear and undisputed that the Merger Agreement became effective on October 19, 2010, and that the merger of Panelworx into Dynics therefore in fact occurred.[9] Although the anticipated pre-merger redemption of shares did not occur,[10] it further appears that Panelworx did not exercise its resulting "unconditional right to cancel the merger," and that the Merger Agreement therefore did not terminate. And it therefore appears that, because the Merger Agreement became effective and Panelworx in fact merged into Dynics, it is at least arguable that the shareholders of Panelworx (as of the Effective Time) became shareholders of Dynics.

Plaintiffs allege in their complaint that they collectively continued to own 16,500 shares in Panelworx as of the Effective Time (because the anticipated redemption of shares did not occur). Under the Merger Agreement, only 4,500 shares of Panelworx would be outstanding as of the Effective Time; but all of those shares would have been owned by plaintiffs (3,000 by Touchwerx/Uhrick and 1,500 by Drenning). And the Merger Agreement expressly provided that each outstanding share of Panelworx stock would be converted into the right to receive one share of Dynics stock.[11]

---

in advance of the Effective Time of the merger, redeem 12,000 of those shares (10,500 from Uhrick/Touchwerx and 1,500 from Drenning), leaving 4,500 outstanding shares of Panelworx as of the Effective Time of the merger. Again, the merger certificates identified that there were 4,500 outstanding shares of Panelworx at that time. It consequently appears that defendants' reference to plaintiff's "16,500 shares" is intended to reference the totality of plaintiffs' outstanding shares of Panelworx before the merger, and to therefore encompass both the shares that it was anticipated would be redeemed by Panelworx and the 4,500 shares that the Merger Agreement indicated would be outstanding as of the Effective Time of the merger (and that the merger certificates themselves reflected were in fact outstanding at that time).

[9] Although the trial court referred to the Merger Agreement as an "attempted merger agreement," we see no basis to conclude (nor do we believe that the trial court did) that the Merger Agreement did not become effective. Defendants do not appear to contend otherwise.

[10] As noted, plaintiffs' complaint not does assert a claim against Panelworx (or against Dynics, its successor corporation under the Merger Agreement) for failing to redeem shares, and does not seek either monetary damages or equitable relief in relation to the failure to redeem.

[11] As noted, the Merger Agreement also contemplated that there would be 4,500 outstanding shares of Panelworx stock as of the Effective Time, and it therefore appears that the Merger Agreement contemplated that it was those shares that would be exchanged for 4,500 shares of Dynics stock that were to be newly issued immediately before the Effective Time.

-6-

The October 19, 2010 merger certificates arguably put plaintiffs on notice that only 4,500 shares of Panelworx were outstanding at that time, and therefore arguably put plaintiffs on notice that the anticipated redemption had not occurred. But again, plaintiffs have not brought suit with regard to the failure to redeem. And we see no basis whatsoever on which to conclude, as defendants assert, that the merger certificates placed plaintiffs on notice "that the 16,500 shares they sought to redeem and convert into Dynics stock had not been recognized no later than October 19, 2010." To the contrary, we conclude that the merger certificates at most placed plaintiffs on notice that the 12,000 shares they had expected Panelworx to *redeem* were not recognized, not that the remaining 4,500 shares they sought to *convert into Dynics stock* were not recognized.

Under these circumstances, we conclude that the trial court erroneously held as a matter of law that plaintiffs never became shareholders of Dynics. It would be premature for us to assess at this juncture the extent to which they became shareholders of Dynics, because the resolution of that question first requires further factual development and legal argument in the trial court.

Accordingly, we further conclude that further factual development is also required before we or the trial court can properly assess when each of plaintiffs' claims accrued, and whether or to what extent the doctrine of fraudulent concealment may have tolled the running of the applicable statutes of limitation. The trial court therefore erred by finding as a matter of law, under these circumstances and at this early stage of the litigation, that plaintiffs' claims accrued in October 2010, and by granting summary disposition under MCR 2.116(C)(7).

### III. MCR 2.116(C)(8)

Plaintiffs also argue that the trial court erred by granting summary disposition in favor of defendants under MCR 2.116(C)(8) on Count III of plaintiffs' complaint, seeking an accounting and financial disclosure under MCL 450.1487. We agree.

"A motion for summary disposition brought under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone." *Beaudrie v Henderson*, 465 Mich 124, 130; 631 NW2d 308 (2001). The Court must "determine whether the plaintiff has stated a claim upon which relief can be granted." *Id*. "The motion should be granted if no factual development could possibly justify recovery." *Id*. The trial court must accept the well-pleaded factual allegations as true and construe those allegations in a light most favorable to the nonmovant. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).

MCL 450.1487(2) provides:

> Any shareholder of record, in person or by attorney or other agent, shall have the right during the usual hours of business to inspect for any proper purpose the corporation's stock ledger, a list of its shareholders, and its other books and records, if the shareholder gives the corporation written demand describing with reasonable particularity his or her purpose and the records he or she desires to inspect, and the records sought are directly connected with the purpose. A proper purpose shall mean a purpose reasonably related to such person's interest as a shareholder. The demand shall be delivered to the corporation at its registered office in this state or at its principal place of business. In every instance where an

attorney or other agent shall be the person who seeks to inspect, the demand shall be accompanied by a power of attorney or other writing which authorizes the attorney or other agent to act on behalf of the shareholder.

Defendants argue that they were entitled to summary disposition on this claim because plaintiffs were not shareholders in Dynics. In the alternative, defendants argue that plaintiffs' requests did not comply with MCL 450.1487(2), in part because they did not include in their request a written power of attorney or other writing authorizing their counsel to act on their behalf as shareholders, and that this defect rendered their claim legally insufficient. We disagree.

The trial court found that plaintiffs were not shareholders in Dynics. But plaintiffs pleaded in their complaint that they were shareholders and that they had requested, through their counsel, that they be allowed to inspect (or receive copies of) Dynics's financial information pursuant to MCL 450.1487. A letter from plaintiffs' counsel was attached to the complaint. The trial court was required to accept these allegations as true and to construe the allegations in favor of plaintiffs. See *Maiden*, 461 Mich at 119. Additionally, and in accordance with our reasoning as set forth earlier in this opinion, factual development—a showing that plaintiffs were shareholders and defendants' wrongfully refused inspection—could have entitled plaintiffs to relief. See *Beaudrie*, 465 Mich at 130. The trial court therefore erred by granting summary disposition on this count of plaintiffs' complaint under MCR 2.116(C)(8).

The trial court did not address defendants' alternative argument that plaintiffs' July 2017 letter failed to meet the requirements of MCL 450.1487(2) such that plaintiffs' claim was invalid as a matter of law. We note, however, that MCL 450.1487(2) requires a power of attorney or other authorizing writing only when "an attorney or other agent shall be the person who seeks to inspect." *Id.* The letter from plaintiffs' counsel requested, however, that Dynics allow Touchwerx and Drenning "and/or their counsel," to inspect the corporate books and records. We therefore find this aspect of defendants' argument unconvincing. We otherwise decline to address defendants' alternative argument in the first instance.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Jane M. Beckering
/s/ Mark T. Boonstra